FILED

2019 FEB -6  A 11: 26

US DISTRICT COURT
BRIDGEPORT CT

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT (BRIDGEPORT)

|  |  |
|---|---|
| NIKHIL DHIR | CIVIL ACTION NO. |
| Plaintiff | 3:19 cv 179 (VLB) |
| v. | |
| KRISTAN PETERS- HAMLIN | |
| PETERS-HAMLIN, LLC  : | |
| Defendants | FEBRUARY 5, 2019 |

## COMPLAINT

### A.  PARTIES

1.  The Plaintiff, Nikhil Dhir, is a Florida resident residing at 125 NE 32nd St, 2403, Miami, FL 33137

2.  The Defendant Kristan Peters-Hamlin ("Peters-Hamlin") is an attorney who practices law in Connecticut and is an attorney licensed to practice law in the State of Connecticut.

3.  The Defendant Peters-Hamlin, LLC is a professional company located at 37 North Avenue Suite 201, Norwalk, CT 06851

### B.  JURISDICTION AND VENUE

4.  This court has jurisdiction over the claims alleged herein under 28 U.S.C. 1332 (a) and (b). The parties reside in different states, and the amount entitled to recover is over $75,000.

5.   This court has jurisdiction over the claims alleged herein under 28 U.S.C. 1391(b) and (c).

## C.  BACKGROUND FACTS

6.   At all times relevant hereto, Peters-Hamlin, as counsel to Dhir was acting as an agent or employee of Peters-Hamlin, LLC and acting within the scope of her agency or employment and, as such, Peters-Hamlin, LLC is responsible for the action and omissions of Defendant Peters-Hamlin.

7.   At all times relevant hereto, pursuant to respondent superior, Peters-Hamlin, LLC was responsible and liable for all of the acts of its agents and employees alleged herein, including but not limited to Peters-Hamlin.

8.   Dhir hired Peters-Hamlin on or about February 23, 2015 pursuant to an executed engagement letter to pursue a claims against The Carlyle Group ("Carlyle") on a contingency fee bases.

9.   Pursuant to the engagement letter, Dhir paid her $5,000.00 to be held for costs.

10.  Under the engagement letter subsection "Anticipated Staffing", Peters-Hamlin's hourly rate was set at $650.00. The document specifically stated that "P&H has agreed to represent you in this matter on a contingency basis, which means that you will not have to pay the rate of $650.00 an hour unless Peters must withdraw from representing you in this matter, or unless you terminate your relationship with Peters Hamlin, LLC."

11.  The "Contingency" section states in bold italicized letters "However, you will not have to pay attorney's fees until a settlement is reached." "Peters Hamlin LLC will attempt to negotiate a pre-litigation settlement for you. You agree to pay Peters

Hamlin LLC twenty-five (25%) of the Contingency Amount for any settlement reached pre-litigation, and in the contingency amount of 40% for any settlement achieved after litigation or arbitration is initiated."

12.  Peters-Hamlin verbally assured Dhir that if they did not get any settlement or if they lost the case, Dhir would not have to pay her anything.

13.  The "withdrawal" section states that "Peters Hamlin, LLC shall have the right to withdraw from this representation if Peters Hamlin LLC believes, in its sole discretion that continuing this representation requires Kristan Peters Hamlin LLC to compromise its ethical responsibilities."

14.  Under the "Fees, Billing Arrangements and Terms of Payment" section, the engagement letter states, "P&H issues invoices on a regular basis, normally each month, for fees and other charges. Invoices are due upon presentment and are considered past due 30 days after receipt, unless the contingency agreement is still in place. It is important to review invoices that are presented each month and to bring any concerns regarding the invoice, services, staffing to the attention of your primary contact at the firm within 30 days of receipt of an invoice."

15.  The engagement agreement was on a contingency fee basis and Dhir was to receive periodic billing statements for his review but would not have to make payment because of the contingency agreement.

16.  In disregard of the engagement letter, Dhir never received any invoices until February of 2018 when he was threatened and sued with a PJR action.

17.  As of February 23, 2015, Peters-Hamlin was suspended in the Southern District of New York and would not be eligible for readmission until April 10, 2015. The New

York State Bar was deciding discipline after hearing but had not reached a decision suspending Peters-Hamlin until 9 days later on March 3, 2015.  The Connecticut State Bar was pursuing an Application for Reciprocal Discipline in the Stamford Superior Court.

18. At the time the engagement letter was executed, Peters-Hamlin failed to inform Dhir that she was suspended from practicing in the Southern District Court of New York and was presently subject to a disciplinary action that may result in her suspension or other discipline in the State of New York and in the State of Connecticut.

19. On March 3, 2015, Peters-Hamlin failed to inform Dhir that she had been suspended from the New York Bar.

20. Dhir sent a copy of his employment documents to Peters- Hamlin via email on or about February 12, 2015.

21. The documents clearly stated in the Restrictive Covenant And Work Made For Hire Agreement (subparagraph 14), that "Parties hereto hereby irrevocably submit themselves to the exclusive personal jurisdiction of the courts of the State and Federal courts located in New York, New York …"

22. On April 10, 2015, Attorney Lawrence Postol, attorney for Carlyle, responded to Peters-Hamlin's initial settlement offer. In addition to stating that the claims had no foundation in fact or law and that certain information was simply untrue, the letter states "…we believe New York is the only correct venue. As a member of the Connecticut bar, however, if you can lay proper venue, then I would be happy to litigate in Connecticut…"

23. The Postol letter also enclosed a full set of employment documents, the exact same documents sent by Dhir except that these documents were signed.

24. In light of the defenses and counterclaims asserted in the April 10, 2015 Postol letter, a revision of the February Engagement letter was necessary.

25. Accordingly, Peters-Hamlin revised the February Engagement Letter and created a new agreement dated June 22, 2015.

26. On June 22, 2015, Peters-Hamlin sent Dhir the "revised agreement" via email.

27. The only revisions appeared under the "Scope of Engagement" section and the "Contingency" section. There were no changes to the attached addendum.

28. Under the revised Scope of Engagement, the June Engagement Letter states that "P&H will represent you regarding negotiations of your severance and bonus at your present employer, as well as any litigation that arises out of your employment."

29. The revised contingency section states "You agree to pay Peters Hamlin LLC in the contingency amount of 40% for any settlements achieved after litigation or arbitration is initiated unless you are counter sued, and Peters Hamlin LLC must defend such a counterclaim. In such case, you agree to pay Peters Hamlin LLC an additional contingency of 10%, for a total of 50% of monies recovered.

30. Just as the February Engagement Letter had listed several contingency percentages should certain events occur, so did the June Engagement Letter. The contingencies listed in both the February and June Engagement Letters were not conditions precedent to the viability of the agreements.

31. The act of a counterclaim was a listed contingency and not a condition precedent necessary to create a legally binding contract.

32. The June engagement Letter was the controlling attorney-client agreement as of June 2015.

33. Peters-Hamlin filed an administrative complaint at OSHA in the summer of 2015.

34. The OSHA proceedings included discovery, testimony and briefing.

35. Dhir contacted Peters-Hamlin via email regarding a Goggle chat between he and a colleague, Stephane Bedat, that could be of interest to Peters-Hamlin and possibly material to the case.

36. Dhir was unable to ascertain how exactly to download the Chat to send to Peters-Hamlin so he typed out the portion of the Chat he believed was material and sent it via email to Peters-Hamlin.

37. Peters-Hamlin then requested that he provide the actual Chat, not the re-typed version. Dhir took a picture of the Chat itself on his phone and sent the actual Chat ("Original Chat") itself to Peters-Hamlin on November 12, 2015.

38. The Original Chat was the complete portion of the Chat discussion Dhir had referred to and had believed might be material to his case. It did not provide the complete Chat history which included pages of personal and social discussions that he did not think were of any substance.

39. On February 9, 2016, Peters-Hamlin, without any reasonable basis in law or fact for doing so, filed suit against Carlyle in the District of Connecticut.

40. Carlyle made a $60,000 settlement offer which Dhir considered accepting.

41. Peters-Hamlin encouraged Dhir to wait for a Summary Judgment decision that she was sure to be in their favor.

42. Peters- Hamlin counseled Dhir that he could recover his unpaid bonus in the amount of approximately $1,615,000, which was included in counts four and five of the complaint.

43. Defendants, Carlyle, moved for a transfer to the Southern District of New York.

44. Peters-Hamlin knew or should have known the case had to be filed in New York.

45. Dhir subsequently learned that Peters-Hamlin billed Dhir for all of her time relating to the motion to transfer even though she should have never filed in the District Court in Connecticut.

46. From July 7, 2016 through to November 16, 2016, Peters-Hamlin attempted to properly amend the complaint, failing at most of her attempts, yet charging Dhir for those attempts.

47. Carlyle filed a motion to dismiss and Peters-Hamlin was ordered to file her response by January 16, 2017.

48. Again, Peters-Hamlin did not follow the court rules as is explained in Judge Sullivan's January 19, 2017 order, 1:16-cv-06378-RJS, ECF #73.

49. From January 19, 2017 through September 29, 2017 discovery was stayed until the Court decided the Motion to Dismiss.

50. Carlyle succeeded in dismissing counts three, four, five, six, seven, eight and nine of the complaint. This included the count relating to reimbursement for unpaid bonuses over $1,500,000 which Peters-Hamlin had relied upon when encouraging Dhir not to accept a settlement offer. Only counts one and two survived.

51. In early October of 2017 Peters-Hamlin received a settlement offer in the amount of $25,000.00 which she forwarded to Dhir.

52. Dhir instructed Peters-Hamlin to accept the offer. Peters-Hamlin requested "about a week" to try and negotiate the settlement amount up. If that did not work, she agreed to present opposing counsel with Dhir's offer to accept $25,000.

53. Dhir did not hear from Peters-Hamlin until early December, when Peters-Hamlin threatened to withdraw if Dhir accepted the offer and stated that if she withdrew (even for this reason – too low of a settlement) then she would be able to collect all of her billable time.

54. Based upon her threat, Dhir could not settle for the $25,000.

55. On or about October 24, 2017, Peters-Hamlin asked Dhir to produce "documents and recordings that will help our case" in response to opposing counsel's document request.

56. Sometime at the end of November 2017, Peters-Hamlin instigated a meritless discovery dispute which lasted, via emails, pleadings and discussions, through January 2018.

57. As of the first week in December, Peters-Hamlin had produced her responses to document requests and interrogatory responses.

58. Peters-Hamlin did not provide any documents pursuant to the document request and only a few as part of the interrogatory responses.

59. At no time did Peters-Hamlin make any written or oral statements to Dhir that she was overwhelmed with discovery or needed legal assistance in any way

60. At no time did Peters-Hamlin make any oral or written statement that she believed Dhir was in any way in violation of the terms of their engagement letter or acted unethically.

61. Judge Richard Sullivan entered an order on January 11, 2018, (1:16-cv-06378-RJS, ECF No. 101) stating, " …the Court finds that Plaintiff's counsel clearly misconstrued opposing counsel's request – which was obviously intended to schedule a date for Plaintiff's deposition, and not to depose him, before providing initial discovery responses. In short, Plaintiff's counsel appears to have needlessly manufactured a crisis that wasted judicial and client resources."

62. On January 11, 2018, Peters-Hamlin made an offer to opposing counsel to settle the case for $500,000.

63. Peters-Hamlin charged for all the emails and pleadings associated with that discovery dispute which was the subject of the court's order.

64. Also, on or about January 16, 2018, Carlyle filed a breach of contract suit against Dhir in New York State Court for violating the terms of his employment contract when Peters-Hamlin wrongfully chose to file the underlying case in the Connecticut District Court.

65. The damages sought on the counter suit were in excess of $225,000.00. At that moment, Peters-Hamlin was forced to admit to that she "was not admitted to practice" in the State of New York.

66. Peters-Hamlin required Dhir to obtain additional counsel to defend the New York State court action.

67. Peters-Hamlin breached the June Engagement Letter because she could not represent Dhir in "any litigation that arises out of your employment" as was required.

68. On January 18, 2018, opposing counsel filed a letter motion for sanctions (1:16-cv-06378-RJS, ECF No. 69). The allegation was that Peters-Hamlin made false representations to the court and acted in bad faith and had affixed opposing counsel's signature to a letter without authorization.

69. On January 22, 2018, opposing counsel filed a letter motion, raising concerns relative to Peters-Hamlin's deposition misconduct and her candor and requested a Rule 37(a) sanctions (1:16-cv-06378-RJS, ECF No.119).

70. On January 24, 2018, opposing counsel filed another letter motion responding to Peters-Hamlin's notice in opposition of the New York case filing. The January 24th letter references Peters-Hamlin's citation to Attorney Postol's April 10, 2015 letter as a "disturbing pattern of misrepresentations" (1:16-cv-06378-RJS, ECF No.128).

71. Peters-Hamlin told Dhir that he not only needed additional counsel to assist with the New York State case but he needed an additional counsel to be the "face" of the Southern District case.

72. Peters-Hamlin told Dhir that because the judge was biased against her, she needed additional counsel.

73. On January 25, 2018, Peters-Hamlin sent Attorney Kathy Marks an email summarizing a "joint defense agreement terms" ("Joint Defense Agreement"). Peters-Hamlin stated in that email, "You would sign the pleadings and be the face

in front of Judge Sullivan as lead. I would be there as co-counsel." There was no discussion or reference to discovery concerns or assistance.

74. Peters-Hamlin needed Attorney Marks to be the face for the plaintiff in front of Judge Sullivan and to sign pleadings in an attempt to mitigate or obviate the letters filed by opposing counsel referencing her misconduct.

75. Peters-Hamlin also wrote that "If there is a settlement or verdict, I take my past 3 years fees off the top. My estimate is that those fees amount to $90K to date. I keep daily records. So if the settlement is $1M, I would take $90K, and then the remainder to split $910K. Then Nik would take 50% and we would split the remaining 50%. Nik has agreed to this."

76. Attorney Marks, in assessing the value of the case, asked Peters-Hamlin, what the amount of the last offer for settlement was. Peters-Hamlin told her it was $1,000,000 and failed to disclose her offer to settle for $500,000 on February 11.

77. Peters-Hamlin had no legal, statutory or other basis to request payment of hourly fees. That request in and of itself was a breach of the existing engagement agreement.

78. Not only was Peters-Hamlin demanding hourly fees off the top of any recovery, she also demanded a portion of the recovery in excess of her hourly fees.

79. Peters-Hamlin was demanding her full hourly fees of "approximately" $90,000 plus a contingency fee. That type of compensation was never contemplated by the engagement letter.

80. Once the terms were agreed to, Attorney Marks filed her appearance on January 25, 2018.

81. Dhir's deposition took place on January 26, 2018, where both Peters-Hamlin and Attorney Marks were present on his behalf.

82. During the deposition, Dhir offered to expand his search criteria and send additional documents to Peters-Hamlin.

83. Dhir sent Peters-Hamlin more documents but she never forwarded any of the additional documents to opposing counsel.

84. On January 31, 2018, Judge Sullivan endorsed Peter-Hamlin's letter of January 30, 2018, with his order on the discovery conduct. He specifically reserved judgment on the Rule 37 (a) request.

85. On February 1, 2018, Peters-Hamlin called Dhir and told him that the Judge had not yet ruled on certain requests for sanctions and she was very concerned that the judge was biased against her and that she couldn't afford to be sanctioned. She also expressed concern that there would not be enough money in the case for her to continue.

86. The February 1, 2018 communication was another threat to terminate the attorney-client relationship without any proper grounds.

87. On Saturday February 3, 2018, Peters-Hamlin sent an email to Dhir requesting that he pay her hourly fees. She did not cite any engagement letter clause, case law, rule or statute to support her request for payment.

88. In the February 3, 2018 email, Peters-Hamlin stated that "…I want to remain positive because I know you will need my help in the future on this case, which I will be happy to provide, if you are fair to me."

89.  There is absolutely no indication in this email that as of February 3, 2018 Peters-Hamlin reasonably felt required to withdraw her appearance because of anything Dhir may have done.

90.  There is absolutely no indication in this email that Dhir did anything at all to cause Peters-Hamlin to withdraw. Peters-Hamlin stated that "I will work behind the scenes to help." She said that she would "be happy" to continue to represent Dhir – if he paid her.

91.  Peters-Hamlin sought to withdraw her appearance but not withdraw as counsel to Dhir. Yet, she sought hourly fee compensation on a contingency engagement agreement.

92.  On Sunday February 4, 2018, Peters-Hamlin withdrew her appearance from the Southern District suit.

93.  Peters-Hamlin withdrew her appearance from the court proceeding because of her own ethical misconduct NOT because of anything that Dhir did.

94.  Peters- Hamlin continued her demand for fees based upon her hourly billing.

95.  Dhir asked her for a breakdown of her fees on February 5, 2018.

96.  Later, on February 9, 2018, Attorney Marks and opposing counsel agreed to withdraw all pending motions for sanctions. Because of that agreement, the Court denied the Rule 37(a) sanctions request.

97.  On or about February 13, 2018, Attorney Marks advised Dhir that Peters-Hamlin's interpretation of the value of the claim was misguided. The bonus claim could not be included in damages. Attorney Marks suggested that the damages were limited

to double the amount of between three to six months of salary. This would have amounted to roughly $90,000 to $190,000.

98.   Attorney Marks advised Dhir that this would largely be netted out by his liability on the damages related to filing the lawsuit in the incorrect venue.

99. On February 15, 2018, opposing counsel sent over a mutual release of claims agreement for Dhir to sign. The document included the terms that "Defendant specifically and expressly does not release his former counsel, Kristan Peters-Hamlin, regarding any matter." Attorney Marks cautioned Dhir against agreeing to this term, and the two parties could not come to an agreement to omit this clause.

100.   After a four-day trial, Judge Adams granted the PJR in the amount of $100,000.00.

101.   The Court expressed concerns as to the ultimate success of the merits of the Case and as to Peters-Hamlin's conduct and representation.


## FIRST CLAIM FOR RELIEF:  LEGAL MALPRACTICE AGAINST KRISTAN PETERS-HAMLIN

1-101. Paragraphs 1-101 are incorporated herein and re-alleged in this First Count as if fully set forth herein.

102.   Defendant, Peters-Hamlin, as counsel for the Plaintiff, owed the Plaintiff a duty to act within the standard of care, skill and loyalty that attorneys undertaking similar matters in Connecticut ordinarily possess and practice.

103.   Defendant, Peters-Hamlin, in violation of her duty, failed to provide the standard of care, skill, and loyalty that attorneys undertaking similar matters in Connecticut ordinarily possess and practice.

104. Defendant, Peters-Hamlin was negligent in her acts/or omissions, in one or more of the following respects:

   a.   Defendant failed to properly advise Plaintiff as to the viability of the claims against Carlyle in encouraging him not to accept the $60,000 offer.

   b.   Defendant failed to file the claim against Carlyle in the proper jurisdiction.

   c.   Defendant failed to counsel and/or advise Plaintiff appropriately regarding the claims against Carlyle.

   d.   Defendant failed to discover and/or advise Plaintiff of her disciplinary history and its effects on her ability to defend Plaintiff.

   e.   Defendant failed to advise Plaintiff that he could enter a settlement in the amount of $25,000.00.

   f.   Defendant failed to advise Plaintiff that he could enter a settlement in the amount of $25,000.00 and that Defendant would be limited to a percentage of that recovery as per the engagement letter.

   g.   Defendant failed to provide Plaintiff with adequate and/or sufficient advice regarding the risks associated with the Carlyle suit and the Carlyle defenses.

   h.   Defendant failed to reasonably defend the scope of her representation to Plaintiff regarding the Carlyle claim.

   i.   Defendant failed to decline the representation of Plaintiff when she could have and should have done so.

   j.   Defendant failed to perform diligently and with proper candor in her pleadings with the Court.

k.     Defendant failed to advise Plaintiff that she lacked the skill, expertise, and/or experience necessary to review and analyze the document and/or research the claim.

l.     Defendant failed to advise Plaintiff of the actual hourly fees accrued.

105.  As a result of Defendant's negligence and in reliance upon her representation of the Plaintiff, Plaintiff sustained significant financial losses.

106.  If not for the Defendant's negligence, the Plaintiff would have settled the matter for either $60,000.00 or $25,000.00 or between $90,000 and $190,000 and would have avoided legal fees associated with the defense of the PJR.

107.  As a result of Defendant's negligence and in reliance upon her representation of the Plaintiff, Plaintiff suffered emotional distress.

**SECOND CLAIM FOR RELIEF:  LEGAL MALPRACTICE AGAINST PETERS HAMLIN, LLC**

1-101. Paragraphs 1-101 of the General Allegations are incorporated herein and re-alleged in this Second Count as if fully set forth herein.

102.  Defendant, Peters Hamlin, LLC, as attorneys for the Plaintiff, owed the Plaintiff a duty to act within the standard of care, skill and loyalty that attorneys undertaking similar matters in Connecticut ordinarily possess and practice.

103.  Defendant, Peters Hamlin, LLC, in violation of this duty, failed to provide the standard of care, skill and loyalty that attorneys undertaking similar matters possess and practice.

104. Defendant, Peters Hamlin, LLC was negligent in its acts and/or omissions, in one or more of the following respects:

   a.      Defendant failed to properly advise Plaintiff as to the viability of the claims against Carlyle in encouraging him not to accept the $60,000 offer.

   b.      Defendant failed to file the claim against Carlyle in the proper jurisdiction.

   c.      Defendant failed to counsel and/or advise Plaintiff appropriately regarding the claims against Carlyle.

   d.      Defendant failed to discover and/or advise Plaintiff of her disciplinary history and its effects on her ability to defend Plaintiff.

   e.      Defendant failed to advise Plaintiff that he could enter a settlement in the amount of $25,000.00.

   f.      Defendant failed to advise Plaintiff that he could enter a settlement in the amount of $25,000.00 and that Defendant would be limited to a percentage of that recovery as per the engagement letter.

   g.      Defendant failed to provide Plaintiff with adequate and/or sufficient advice regarding the risks associated with the Carlyle suit and the Carlyle defenses.

   h.      Defendant failed to reasonably defend the scope of her representation to Plaintiff regarding the Carlyle claim.

   i.      Defendant failed to decline the representation of Plaintiff when she could have and should have done so.

   j.      Defendant failed to perform diligently and with proper candor in her pleadings with the Court.

    k.      Defendant failed to advise Plaintiff that she lacked the skill, expertise, and/or experience necessary to review and analyze the document and/or research the claim.

    l.      Defendant failed to advise Plaintiff of the actual hourly fees accrued.

105.  As a result of Defendant, Peters Hamlin, LLC's negligence and in reliance upon its representation of Plaintiff, Plaintiff has sustained significant financial losses.

106.  If not for the Defendant's negligence, the Plaintiff would have settled the matter for either $60,000.00 or $25,000.00 or between $90,000 and $190,000 and would have avoided legal fees associated with the defense of the PJR.

107. As a result of Defendant's negligence and in reliance upon her representation of the Plaintiff, Plaintiff suffered emotional distress.

## THIRD CLAIM FOR RELIEF:  BREACH OF FIDUCIARY DUTY AS COUNSEL AGAINST KRISTAN PETERS-HAMLIN

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Third Count as if fully set forth herein.

102.  Peters-Hamlin, as the attorney for the Plaintiff owed a fiduciary duty to the Plaintiff in her representation of the Plaintiff and in all of her dealings with the Plaintiff.  She owed the Plaintiff a duty of loyalty; a duty to act in his best interests; and a duty to act in good faith in all matters pertaining to her role in advising Plaintiff regarding his claims against Carlyle.

103.   The Plaintiff trusted Defendant Peters-Hamlin and put his confidence in Defendant Peters-Hamlin to properly research and to act in his best interests at all times with respect to the aforementioned claims.

104.   The Plaintiff believed that Defendant Peters-Hamlin, based upon her representations and her cultivation of his trust through a history of counseling her, had superior knowledge, skill and expertise with respect to her ability to research the claims and appropriately advise him with respect to the risks associated with pursuing them against Carlyle.

105.   As aforesaid, the actions of Peters-Hamlin were a breach of her fiduciary duties, in one or more of the following respects:

   a.   Defendant breached her fiduciary duty to Plaintiff.

   b.   Defendant failed to diligently research issues.

   c.   Defendant failed to discover and/or advise Plaintiff that the claim for unpaid bonuses in the amount of $1,615,000 was not a claim that could be made against Carlyle.

   d.   Defendant deceived Plaintiff in not notifying him of her disciplinary history.

   e.   Defendant deceptively advised Plaintiff of her superior knowledge, skill and/or expertise, or represented that she had superior knowledge, skill, and/or expertise to review the facts of the case and recognize whether it was a legitimate or appropriate claim to pursue and to pursue in the Connecticut jurisdiction.

   f.   Defendant failed to counsel Plaintiff in all reasons why he should settle his claims against Carlyle.

g.  Defendant advanced her own interests to the detriment of the Plaintiff by undertaking the representation and not performing the work diligently and/or adequately, all while charging Plaintiff for the work, all to her own personal benefit.

h.  Defendant advanced her own interests to the detriment of the Plaintiff by continuing the litigation despite Plaintiff's desire to settle.

i.  Defendant failed to perform appropriate research on the jurisdictional venue.

j.  Defendant failed to provide Plaintiff with adequate and/or sufficient advice regarding the risks associated with pursing a claim against Carlyle.

k.  Defendant failed to protect Dhir against a counterclaim for breach of contract.

106.  The Plaintiff has sustained financial losses as a result of Defendant Peters-Hamlin's breach of her fiduciary duties as counsel for the Plaintiff.

107.  If not for the Defendant's actions and omissions in carrying out her fiduciary duties, the Plaintiff would not have sustained the losses.

**FOURTH CLAIM FOR RELIEF:  BREACH OF FIDUCIARY DUTY AS COUNSEL AGINST PETERS HAMLIN LLC**

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Fourth Count as if fully set forth herein.

102.   Defendant, Peters Hamlin, LLC, as the law firm for the Plaintiff in connection with his claim against Carlyle, owed a fiduciary duty to the Plaintiff in its representation of the Plaintiff and in all of its dealings with the Plaintiff.  It owed the Plaintiff a duty of loyalty; a duty to act in his best interests; and a duty to act in good faith in all matters pertaining to its role in advising Plaintiff regarding his claims.

103.   The Plaintiff trusted Peters Hamlin LLC and put his confidence in them to properly represent him and act in his best interests at all times relating to his claims.

104.   Defendant, Peters Hamlin, LLC, through its agent Peters-Hamlin, breached its fiduciary duty to the Plaintiff in one or more of the following respects:

a.   Defendant breached her fiduciary duty to Plaintiff.

b.   Defendant failed to diligently research issues.

c.   Defendant failed to discover and/or advise Plaintiff that the claim for unpaid bonuses in the amount of $1,615,000 was not a claim that could be made against Carlyle.

d.   Defendant deceived Plaintiff in not notifying him of her disciplinary history.

e.   Defendant deceptively advised Plaintiff of her superior knowledge, skill and/or expertise, or represented that she had superior knowledge, skill, and/or expertise to review the facts of the case and recognize whether it was a legitimate or appropriate claim to pursue and to pursue in the Connecticut jurisdiction.

f.      Defendant failed to counsel Plaintiff in all reasons why he should settle his claims against Carlyle.

g.      Defendant advanced her own interests to the detriment of the Plaintiff by undertaking the representation and not performing the work diligently and/or adequately, all while charging Plaintiff for the work, all to her own personal benefit.

h.      Defendant advanced her own interests to the detriment of the Plaintiff by continuing the litigation despite Plaintiff's desire to settle.

i.      Defendant failed to perform appropriate research on the jurisdictional venue.

j.      Defendant failed to provide Plaintiff with adequate and/or sufficient advice regarding the risks associated with pursing a claim against Carlyle.

k.      Defendant failed to protect Plaintiff against a counterclaim for breach of contract.

105.  The Plaintiff has sustained financial losses as a result of Defendant Peters-Hamlin's breach of her fiduciary duties as counsel for the Plaintiff.

106.  If not for the Defendant's actions and omissions in carrying out her fiduciary duties, the Plaintiff would not have sustained the losses.

## FIFTH CLAIM FOR RELIEF:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY KRISTN PETERS-HAMLIN.

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Fifth Count as if fully set forth herein

102.   The aforementioned actions of the Defendant Peters-Hamlin created an unreasonable risk of causing the Plaintiff emotional distress.  If not for the Defendant's negligence, the Plaintiff would not have sustained such losses, emotional and otherwise.

103.   The Plaintiff's emotional distress was foreseeable based upon his concerns for the situation and the amount of money at risk and the serious nature of the claims.

104.   The Plaintiff's emotion distress, including but not limited to stress, emotional upset, and sleeplessness, was severe enough that it could have and at times did result illness, as described herein.


## SIXTH CLAIM FOR RELIEF:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY PETERS HAMLIN, LLC

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Sixth Count as if fully set forth herein

102.   The aforementioned actions of Peters-Hamlin, LLC's agent, Peters-Hamlin, created an unreasonable risk of causing the Plaintiff emotional distress.

103.   The Plaintiff's risk of emotional distress was foreseeable based upon his concern for the situation, the amount of money at risk, and the serious matter.  If not for the Defendant's negligence, the Plaintiff would not have sustained such losses, emotional or otherwise.

104.   The Plaintiff's emotional distress, including but not limited to stress, emotional upset, and sleeplessness, was severe enough that it could have and at times did result in illness, as described herein.  The conduct of Kristan Peters-Hamlin, LLC's agent, Peters-Hamlin, was the cause of the Plaintiff's distress.

## SEVENTH CLAIM FOR RELIEF:  NEGLIGENT MISREPRESENTATION BY KRISTAN PETERS-HAMLIN

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Seventh Count as if fully set forth herein.

102.   Defendant Peters-Hamlin represented to the Plaintiff that she had conducted research into the proper venue to file the claim or had a stipulation from opposing counsel which would have allowed for jurisdiction in Connecticut.

103.   Defendant Peters-Hamlin knew or should have known that this information was false.

104.   Defendant Peters-Hamlin represented to Plaintiff that the engagement letter legally allowed her to charge an hourly rate at any time for any reason.

105.   Defendant Peters-Hamlin represented to the Plaintiff that she would withdraw if he accepted the $25,000.00 settlement amount.

106.   Plaintiff reasonably relied on Peters-Hamlin's misrepresentations to his detriment.

107.   As a result of Peters-Hamlin's misrepresentations, Plaintiff has suffered financial losses.  If not for the Defendant's negligence, the Plaintiff would not have sustained such losses.

## EIGHTH CLAIM FOR RELIEF:  NEGLIGENT MISREPRESENTATION BY KRISTAN PETERS HAMLIN LLC

1-101. Paragraphs 1-101 are incorporated herein and realleged in the Eighth Count as if fully set forth herein.

102.   Defendant, Peters Hamlin, LLC represented to the Plaintiff that it had conducted research into the proper venue to file the claim or had a stipulation from opposing counsel which would have allowed for jurisdiction in Connecticut.

103.   Defendant Peters Hamlin, LLC knew or should have known that this information was false.

104.   Defendant Peters-Hamlin, LLC represented to Plaintiff that the engagement letter legally allowed her to charge an hourly rate at any time for any reason.

105.   Defendant Peters-Hamlin, LLC represented to the Plaintiff that she would withdraw if he accepted the $25,000.00 settlement amount.

106.   Plaintiff reasonably relied on Kristan Peters-Hamlin, LLC's misrepresentations to his detriment.

107.   As a result of Kristan Peters-Hamlin, LLC's misrepresentations, Plaintiff has suffered financial losses.  If not for the Defendant's negligence, the Plaintiff would not have sustained such losses.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for:

1. Actual and compensatory damages;

2. As to the Third and Fourth Counts, punitive damages;

3. As to Third and Fourth Counts, attorney's fees and costs; and

4. Any relief in which law or equity may appertain.

THE PLAINTIFF
NIKHL DHIR

By_____
Nikhil Dhir

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT (BRIDGEPORT)**

| | | |
|---|---|---|
| NIKHIL DHIR | : | CIVIL ACTION NO. |
| Plaintiff | : | |
| v. | : | |
| KRISTAN PETERS- HAMLIN | : | |
| PETERS-HAMLIN, LLC    : | : | |
| Defendants | : | FEBRUARY 5, 2019 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand is in excess of ONE HUNDRED AND NINETY FIFE THOUSAND DOLLARS ($195,000.00) exclusive of costs and interest.

THE PLAINTIFF
NIKHL DHIR

By_____

Fold along dotted line to close.





ORIGIN ID:MPBA   (305) 930-3898
NIKHIL DHIR

125 NE 32ND ST
2403
MIAMI, FL 33137
UNITED STATES US

TO   **US DISTRICT COURT**

**915 LAFAYETTE BOULEVARD**

**BRIDGEPORT CT 06606**
(203) 579-5861
INV:
PO:                          REF:

SHIP DATE: 05FEB19
ACTWGT:
CAD: 308600009/INET4102

BILL CREDIT CARD

DEPT:



FedEx
Express